UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MATTHEW S. KRAUSE,
        Plaintiff,

      v.                                  Case No. 19-cv-1535-bhl

BETTY KATZUR,
        Defendant.

---

## DECISION AND ORDER

---

In this lawsuit, plaintiff Matthew S. Krause alleges that defendant Betty Katzur violated his Eighth Amendment rights by injecting him with another inmate's medication. *See* Dkt. Nos. 7, 16. The parties filed cross-motions for summary judgment. Dkt. Nos. 26 and 32. For the reasons explained below, the Court will grant Defendant's motion for summary judgment, deny Plaintiff's motion for partial summary judgment, and dismiss the case.

### FACTUAL BACKGROUND

At the relevant time, Krause was an inmate at the Oshkosh Correctional Institution. Dkt. No. 34, ¶1. Katzur was a registered nurse who worked at the institution. *Id*., ¶¶2-4. The relevant facts are undisputed. *See* Dkt. Nos. 34 and 44.

On December 31, 2018, Katzur called security staff and asked them to bring inmate Michael Crouse to the exam room in the Restrictive Housing Unit (RHU) to receive a Humira injection.[1] Dkt. No. 34, ¶¶9-11. Krause (the plaintiff) was also housed on RHU at that time. *Id*., ¶8. When Katzur arrived on unit, security staff had brought Krause into the exam room (instead of Crouse). *Id*., ¶12. Katzur took the injection from the fridge and compared the label on the

---

[1] Humira is a medication used to treat conditions such as rheumatoid arthritis, Crohn's disease, and plaque psoriasis. Dkt. No. 34, ¶22.

injection container to the Medication/Treatment Record she had with her for the appointment. *Id.*, ¶13. The patient name, medication, dose, time, and route of administration matched. *Id*. Katzur then stated out loud the inmate name (Michael Crouse) and the name of the injection (Humira). She then administered the injection, and returned to the Health Services Unit (HSU). *Id.*, ¶¶14, 16. Katzur was not aware at the time she gave the injection that Krause was the incorrect inmate, and Krause did not indicate at that time that he was not Michael Crouse. *Id.*, ¶¶15, 17, 26. Toward that end, Krause does not dispute that at the time he received the injection Katzur was not aware that Krause had been misidentified in RHU. *See* Dkt. No. 44, ¶26.

About three days later, on January 2, 2019, HSU received a request slip from Krause saying he received a Humira injection and he didn't know why he got it. Dkt. No. 34, ¶21. A nurse from HSU immediately examined Krause that very same day for side effects. *Id.*, ¶22. Krause had a steady gait, clear speech, unlabored breathing, and he did not have signs of a fever. *Id*. Based on the assessment in HSU that morning, Krause appeared to have no problems because of the injection. *Id.*, ¶25. The nurse told Krause to report any side effects such as fever, muscle pain, lightheadedness. *Id.*, ¶22. Krause stated that he understood, and he did not have any questions or further concerns. *Id.*

Katzur then completed a Medication Occurrence Report. *Id.*, ¶23. In the report, she noted that she had asked security staff to bring inmate Michael Crouse to the exam room in RHU. *Id.*, ¶24. According to the report, the patient was asked if he was Michael Crouse and he responded, "yes." *Id*. Following the report, Katzur notified Advanced Care Provider Nancy Bowens (not a defendant), the pharmacy, and security staff of what had happened on December 31, 2018. *Id.*, ¶25. HSU Manager Dawn Fontana (not a defendant) reviewed Katzur's report and signed off on it. *Id*.

About three days later, on or around January 5, 2019, Krause submitted an Interview/Information Request complaining that he received someone else's injection, that he got sick the next day, and that had shortness of breath, pain, and dizziness. *Id.*, ¶27. Krause had not previously complained of these symptoms and these symptoms were not noted in his medical records following his January 2, 2019 examination. *Id.* Fontana responded that the issue had already been addressed. *Id.*, ¶28.

On January 11, 2019, HSU received another request slip from Krause complaining of backpain, difficulty sleeping, and dry/itchy skin. *Id.*, ¶29. A nurse saw him later that day for a "sick call." *Id.* Krause did not have symptoms of a fever and his skin did not appear dry or flaky. *Id.* Krause was encouraged to stretch to address his backpain and he was reminded of his upcoming appointment with an Advanced Care Provider. *Id.* Krause never reported or exhibited any signs of a "deadly infection" as a result of the Humira shot, as he claims in this lawsuit. *Id.*, ¶30.

Krause filed an inmate complaint about the incident; and the inmate complaint was affirmed. *Id.*, ¶¶31-33. Shortly thereafter, the DOC implemented a new policy where an inmate's medication and his identification card are "bar code scanned" at the time of medication administration to verify that the correct inmate receives the correct medication. *Id.*, ¶32.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if

"the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The party asserting that a fact is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## ANALYSIS

Defendant claims she is entitled to summary judgment because Krause admits in his opposition materials that she did not know that he had been misidentified when she gave him the injection on December 31, 2018. *See* Dkt. No. 33; *see also* Dkt. No. 44, ¶26.

The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To survive summary judgment on an Eighth Amendment claim, Krause must provide evidence from which a reasonable jury could conclude that Katzur was deliberately indifferent towards an excessive risk to inmate health or safety. *Id.* Specifically, Krause must establish: (1) that he was exposed to an objectively serious harm; and (2) that Katzur had "actual, and not merely constructive, knowledge of the risk." *Id.*

"The requirement of subjective awareness tethers the deliberate-indifference cause of action to the Eighth Amendment's prohibition of cruel and unusual punishment." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016). "The defendant must know of

facts from which [s]he could infer that a substantial risk of serious harm exists, and [s]he must actually draw the inference." *Id*. Negligence, and even gross negligence, is not enough. *James v. Hale*, 959 F.3d 307, 318 (7th Cir. 2020); *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996).

For purposes of summary judgment, the Court will presume that providing Brown with another inmate's Humira injection exposed him to an objectively serious risk of harm. *See e.g. Brown v. Cascadden*, No. 18-CV-483-BBC, 2019 WL 6174365, at *2 (W.D. Wis. Nov. 20, 2019) ("Any time a prisoner receives the wrong medication, there is a risk of harm."); *see also Robbins v. Waupun Correctional Institution*, 2016 WL 5921822, at *3 (E.D. Wis. Oct. 11, 2016) ("Administering the wrong medication may well pose a substantial risk of harm, depending on the circumstances."). But no reasonable jury could conclude that Katzur was deliberately indifferent towards that risk of serious harm.

Krause's entire case boils down to the argument that Katzur should have known that he (Michael Krause) was not a different inmate (Michael Crouse) at the time she administered the injection. *See* Dkt. No. 42. Krause argues that he stated at the appointment, "what was the medication for" and "I don't remember getting any same injection before." *Id*. at 4. Katzur allegedly responded, "it was a medication you previously received on the left side of your stomach." *Id*. Accepting Krause's version of events, Katzur perhaps should have paused to confirm that she had the right patient. But given the other steps that she took before administering the medication – steps that Krause acknowledges she took – a reasonable jury could not conclude that Katzur was deliberately indifferent. At most, Katzur made an unfortunate mistake. Indeed, given that Krause does not appear to have objected to the injection at the time, he also did not realize he was not the right patient.

While this unfortunate accident may amount to negligence or medical malpractice, it does not amount to Eighth Amendment deliberate indifference. *See Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006) (holding that "even admitted medical malpractice does not give rise to a constitutional violation"); *see also Richmond v. Dart*, 2012 WL 567245, at *2 (N.D. Ill. Feb. 17, 2012) ("The officer, the nurse—and Plaintiff himself, for that matter—all may have been negligent for failing to confirm that the medication in question was being taken by the right inmate. But neither negligence nor gross negligence implicates the Constitution."). Based on the record, no reasonable jury could conclude that Katzur was deliberately indifferent towards a substantial risk of serious harm. The Court will therefore grant Defendant's motion for summary judgment, deny Plaintiff's motion for partial summary judgment, and dismiss this case.

## CONCLUSION

For the reasons stated above, **IT IS ORDERED** the plaintiff's motion for partial summary judgment (Dkt. No. 26) is **DENIED**; the defendant's motion for summary judgment (Dkt. No. 32) is **GRANTED**; and this case is **DISMISSED**. The clerk's office is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 24th day of June, 2021.

s/ *Brett H. Ludwig*
Brett H. Ludwig
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.